656 So.2d 677 (1995)
STATE of Louisiana, Appellee,
v.
Robert A. STEWART, Appellant.
No. 27049-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
Rehearing Denied June 15, 1995.
*678 Whitmeyer and Glassel by Stephen A. Glassell, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., W. Stanley Lockard and Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before NORRIS, HIGHTOWER and WILLIAMS, JJ.
HIGHTOWER, Judge.
Upon addressing two counts each of sexual battery, LSA-R.S. 14:43.1, and aggravated oral sexual battery, LSA-R.S. 14:43.4, together with one count of possession of cocaine, LSA-R.S. 40:967(C)(2), a jury found Robert A. Stewart guilty only of the controlled dangerous substance violation. Adjudicated and sentenced as an habitual offender, defendant presents various assignments *679 of error in this appeal. We affirm the conviction but remand for resentencing.

Background
In July 1991, defendant procured accommodations for one day at the Sheraton Pierremont in Shreveport. The next morning, he picked up his out-of-wedlock daughter, age 14, and brought her to the motel to have breakfast. The teenager subsequently phoned her mother, accusing her father of sexually abusing her in his room while under the influence of cocaine. In response to the mother's request that the child be removed from the room, hotel security made a disturbance report to the Shreveport Police Department around 10:30 a.m.
When Sergeant W.T. Wilson arrived at the establishment, the manager asked that defendant be vacated. After allowing his daughter to exit, however, Stewart stalled removal efforts by the police and hotel security for over an hour. Finally, subsequent to the official check-out time, he opened the door and announced, "I am leaving." The authorities immediately placed him under arrest.
With permission from hotel management, Wilson then entered the room. Under the mattress and box springs of the bed, he discovered seven plastic bags containing cocaine residue, as well as traces of the same substance on the carpet in two or three places. Additionally, the sergeant and another officer retrieved, from a truck, personal items belonging to Stewart and his daughter. Defendant's wife had given the policemen the keys to the vehicle, a demo unit utilized by her husband as a used car salesman, and had requested that the materials be removed before the automobile could be returned to the employer. As a consequence, the officers seized, in plain view on the front seat, a plastic bag similar to those previously found. That packet also contained cocaine, according to a later analysis.
The district attorney charged defendant with possession of cocaine and several counts of sexual battery. At trial, the jury found Stewart guilty of the narcotics offense, but acquitted him on the other matters. Subsequently adjudicated a fourth felony offender under LSA-R.S. 15:529.1, he received the mandatory minimum sentence of twenty years at hard labor. This appeal ensued.[1]

Discussion

Motion to Suppress
Defendant initially asserts that the trial court erred in denying his motion to suppress. He contends that the police illegally searched his motel room without permission.[2] We disagree.
Although not absolute, those protections against nonconsensual entry and unreasonable searches and seizures afforded by both the Fourth Amendment to the Federal Constitution and Article 1, Section 5 of the Louisiana Constitution extend to a guest in a motel room. See Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); State v. Abram, 353 So.2d 1019 (La.1978), cert. denied; State v. Westfall, 446 So.2d 1292 (La.App. 2d Cir.1984), writ denied. Nevertheless, it is well settled that a guest at such an establishment has no reasonable expectation of privacy in a room after the rental period has expired. State v. Rhodes, 337 So.2d 207 (La.1976); State v. Westfall, supra; U.S. v. Ramirez, 810 F.2d 1338 (5th Cir. 1987), cert. denied; U.S. v. Huffhines, 967 F.2d 314 (9th Cir.1992).
In the instant case, defendant had no reasonable expectation of privacy after walking out of the motel room and announcing that he would be leaving the establishment. Moreover, in light of the noon checkout time, the rental period had clearly lapsed at the time of the arrest.[3] Consequently, the officers did not need Stewart's consent to conduct a warrantless search of the leased premises. See State v. Rhodes, *680 supra; State v. Westfall, supra; U.S. v. Ramirez, supra; U.S. v. Huffhines, supra.
Furthermore, a consensual warrantless search is valid if the facts available to the officer at the time of entry justify a man of reasonable caution in the belief that the person giving permission to search has authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (limiting Stoner, supra, to the facts therein); U.S. v. Patrick, 959 F.2d 991 (D.C.Cir.1992). In the present case, Sergeant Wilson stated that he asked the Sheraton's acting manager if he could enter the room vacated by Stewart and that she replied, "Yes." Accordingly, under the total circumstances, the police officer could reasonably assume he had permission to search the premises from a person in control thereof. Cf. State v. Abram, supra; State v. Furino, 451 So.2d 1139 (La.App. 3d Cir. 1984), writ denied; U.S. v. Huffhines, supra.
Defendant indirectly complains that the state introduced the hotel manager's consent through inadmissible hearsay, the testimony of Sergeant Wilson, which should have been excluded. We again disagree. At a motion to suppress hearing, statements made to a police officer by others are nonhearsay if not offered for the truth of the matter asserted, but merely to explain the officer's actions. State v. Haygood, 26,102 (La.App. 2d Cir. 08/17/94), 641 So.2d 1074, writ denied, and authorities therein; see also LSA-C.E. Art. 801(C). In the present case, significant suppression issues turned upon the reasonableness of the patrolman's belief that he had obtained consent to search Stewart's hotel room. The manager's statements, then, clearly had relevance and did not constitute hearsay.

Prosecutorial Vindictiveness
In his second assignment, defendant charges that the prosecutor acted vindictively in filing an habitual offender bill against him. He contends that the state sought to adjudicate him a multiple felon only in retaliation for his acquittal on the sexual battery offenses, after he rejected a plea bargain and elected a jury trial. Thus, he asserts, the trial court erred both in denying his motion to quash the bill and in restricting his hearing on the issue. This argument is meritless.
A defendant has the burden of proving, by a preponderance of the evidence, the affirmative defense of prosecutorial vindictiveness. U.S. v. Krezdorn, 718 F.2d 1360 (5th Cir.1983), cert. denied. In that regard, the court will examine the state's actions in the context of the entire proceedings. Id. The events in the case will create a presumption of vindictiveness if, to a reasonable mind, the filing of the habitual offender bill can be explained only by a desire to deter or punish the exercise of legal rights. See Id.; U.S. v. Esposito, 968 F.2d 300 (3d Cir.1992). But where the government's conduct is equally attributable to legitimate reasons, a defendant must prove actual vindictiveness for a presumption will not apply. U.S. v. Esposito, supra. A mere opportunity for vindictiveness does not suffice. U.S. v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); U.S. v. Esposito, supra.
To support his allegations of prosecutorial vindictiveness, Stewart submitted a letter showing that the prosecutor had rejected his proposal to plead guilty on the possession charge in exchange for an indefinite continuance of the more serious sex offenses and the state's sentencing memorandum to the district judge. Defendant also relied upon the fact that the assistant district attorney gradually amended the habitual felon bill from second to fifth offender status. On the other hand, in considering the state's assertions that it did not immediately have the requisite information to prove all of the out-of-state convictions, the trial court noted the late arrival dates of many of the Maryland court documents. Thus, defendant neither established a presumption of vindictiveness nor sufficiently differentiated this case from a typical multiple offender proceeding. Similarly, without a more specific factual showing, these circumstances are not appropriate for granting defendant the highly unusual opportunity to call the district attorney, as a witness, to elicit his attitude about the plea bargain or his reasons for proceeding to trial.
*681 In short, the prosecutor did nothing deterring the exercise of Stewart's legal rights. More importantly, a district attorney has great discretionary power to file an habitual offender bill under LSA-R.S. 15:529.1(D), just as he has the initial unlimited power to prosecute "whom, when, and how" he chooses. See LSA-C.Cr.P. Art. 61; State v. Dorthey, 623 So.2d 1276 (La.1993). His use of the habitual offender laws simply provides an ancillary sentencing factor designed to serve important and legitimate societal purposes. See State v. Youngblood, 26,722 (La.App. 2d Cir. 12/22/94), 647 So.2d 1388, writ denied. Thus, the trial court did not err in restricting defendant's hearing or in denying his motion to quash the recidivist charge. Cf. U.S. v. Krezdorn, supra; U.S. v. Esposito, supra.

Habitual Offender Adjudication
Following an habitual offender hearing, several rulings on motions to quash, and a writ application to this court, the district judge adjudicated Stewart a four-time felon under LSA-R.S. 15:529.1. In several assignments of error, he now challenges that finding. His primary argument centers on the state's purported failure to establish certain earlier Maryland convictions under the standards delineated in State v. Shelton, 621 So.2d 769 (La.1993).
In that decision, the supreme court revised the scheme for assigning the burden of proof in habitual offender proceedings, as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [Footnote omitted.] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, ... the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
State v. Shelton, supra, at 779-80. The opinion noted that, unlike the prior approach allocating the entire burden to the state, this new procedure gives appropriate significance to the deeply rooted presumption of regularity attaching to judgments of conviction that have become final. See also LSA-R.S. 15:529.1(D)(1)(b).
Robbery and Third-Degree Sex Offense Convictions
Regarding his Maryland convictions for robbery and a third-degree sex offense, Stewart argues that the state did not meet its initial burden of proof under Shelton, in that the court minutes presented by the prosecution did not show representation by counsel at the time these two convictions occurred. This complaint has merit.
Although the introduced documents show a public defender appointed to represent Stewart on both charges, neither set of minute entries reflects the attorney being present in court when defendant plead guilty to robbery on October 31, 1980, or at any time during the jury trial resulting in the guilty verdict on the third-degree sex offense. Consequently, we conclude that the state failed to meet its initial burden of proof and that the trial court erred in considering these convictions for purposes of the habitual offender adjudication. See State v. Fleury, 545 So.2d 1208 (La.App. 4th Cir.1989); cf. State v. Cressy, 440 So.2d 141 (La.1983).[4]

*682 Escape Conviction

Concerning his Maryland escape conviction in August 1982, defendant contends that the state failed to meet its burden of showing a Boykinization at the taking of the guilty plea. More specifically, while conceding that the introduced minutes reflect a counselled plea and even satisfy the prosecution's initial requirement of proof, Stewart argues that Shelton permits him to produce "affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea," and thus shift the burden back to the state, by merely pointing out that the presented documentation fails to reveal a Boykin colloquy between him and the judge.
Defendant's contention, however, ignores the Shelton court's design for preserving the presumption of regularity in final judgments. His proposed course, viz., allowing a defendant to simply rely upon the absence of a Boykin notation within the minute entry, would disregard that presumption and essentially reinstate the prior jurisprudence that placed the entire burden of proof upon the state. Contrarily, Shelton requires affirmative evidence from the defendant and indicates that he can attempt to meet his burden "with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence." State v. Shelton, supra, at 779, fn. 24. Here, Stewart's reliance on the alleged deficiency in the prosecution's evidence is misplaced. In fact, the situation before us presents exactly the circumstance under which the presumption is intended to operate. See, e.g., State v. Smith, 415 So.2d 930 (La.1982); State v. Jefferson, 386 So.2d 77 (La.1980); State v. Holden, 375 So.2d 1372 (La.1979), (all three cases requiring the defendant to affirmatively show substantial defects in out-of-state predicate convictions).
Stewart also maintains that the Maryland escape conviction cannot be utilized because, at the time of his conviction in 1982, simple escape, LSA-R.S. 14:110, could not be used to enhance a defendant's sentence under the Habitual Offender Law. See State v. Cox, 344 So.2d 1024 (La.1977). However, in response to an earlier writ application filed by the state in the present case (State v. Stewart, No. 26,445-KW (03/31/94)), another panel of this court, citing State v. Morris, 429 So.2d 111 (La.1983), and State v. Goodin, 550 So.2d 801 (La.App. 2d Cir.1989), writ denied, concluded that the challenged conviction could be used as a predicate offense. That disposition found "no showing that the punishment for, or characterization of, that offense depended on the prisoner's custody status as was condemned in State v. Cox, [citation omitted] and State v. Taylor, 347 So.2d 172 (La.1977)." We thus reject defendant's corollary contention on appeal.

Possession of Cocaine
Regarding the final predicate offense, a Maryland guilty plea to possession of cocaine, Stewart argues that a strict interpretation of Shelton precludes utilization of any plea obtained after the defendant knowingly and voluntarily waives his right to counsel. Put differently, he contends that the prosecution's burden is to show "that defendant was represented by counsel" and that nothing less will suffice. We find this assignment completely without merit.
It is well accepted that a guilty plea made without assistance of counsel constitutes a predicate offense in an habitual offender hearing, provided there is a valid waiver of counsel. See State v. Strain, 585 So.2d 540 (La.1991); State v. Brew, 593 So.2d 447 (La.App. 2d Cir.1992). We thus do not read Shelton to bar, in blanket fashion, all uncounselled pleas as enhancement felonies. Hence, with the state offering a perfect transcript of the waiver, we find no error in the *683 trial court's determination that this prior conviction is valid. Defendant does correctly assert that, because the commission of both this crime and the third-degree sex crime occurred prior to either conviction, the two offenses are not sequential under State ex rel Mims v. Butler, 601 So.2d 649 (La.1992), and only one of these can be considered in the habitual offender proceeding. Yet, in light of our invalidation of the sex violation, the possession plea clearly qualifies as a predicate offense.

Advisement of Rights
Stewart additionally contends that the trial court erred in adjudicating him an habitual offender without first advising him of his constitutional and statutory rights. Even so, defendant obviously exercised his right to remain silent and to have a full evidentiary hearing. Therefore, he suffered no prejudice warranting reversal of his multiple offender adjudication. See LSA-C.Cr.P. Art. 921; State v. Palmer, 93-1027 (La. App. 5th Cir. 04/26/94), 636 So.2d 1091; State v. Miles, 613 So.2d 1047 (La.App. 3d Cir.1993).

Summary
Briefly stated, inasmuch as defendant's robbery and third-degree sex conviction should not have been treated as predicate offenses at the recidivist hearing, his sentence must be vacated and set aside.[5] Conversely, with Stewart's complaints about his prior convictions for escape and possession of cocaine having no merit, we deem him a third felony offender and remand the case for resentencing. Moreover, because double jeopardy principles are inapplicable to enhancement proceedings, the state may retry the multiple bill if able to cure the noted defects. See State v. Dorthey, supra; State v. Johnson, 432 So.2d 815 (La.1983); State v. Payne, 586 So.2d 652 (La.App. 5th Cir.1991).

Conclusion
For these reasons, we affirm defendant's conviction but reverse his adjudication as a fourth felony offender. The sentence is hereby vacated and set aside. Thus, finding that the record establishes two out-of-state predicate offenses, we remand to the trial court for resentencing consistent with this conclusion.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.

APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER, BROWN and WILLIAMS, JJ., and WALLACE A. EDWARDS, J., Pro Tem.
Rehearing denied.
NOTES
[1] Although initially reserving eleven assignments of error, defendant has abandoned two in brief, Nos. 6 and 11.
[2] Defendant's motion to suppress originally challenged the search of both his motel room and truck. On appeal, however, he has abandoned the complaint regarding the vehicle.
[3] At the suppression hearing, the state, without objection, introduced a copy of defendant's hotel receipt showing payment for one night only.
[4] Having found that the state did not adequately prove the Maryland conviction for the third-degree sex offense, Md.Ann.Code Art. 27, § 464B, we need not address defendant's other arguments regarding this conviction. However, recognizing the state could seek to readjudicate this prior felony if it obtains sufficient proof to cure the present defect, we have taken cognizance of the contention that the crime committed in Maryland would not constitute a felony in Louisiana. See LSA-R.S. 15:529.1(A). The indictment, under which the out-of-state jury convicted Stewart, charges that he "did unlawfully engage in sexual contact, to wit: touched the breast of said [victim], who is under fourteen years of age." Thus, upon a comparison of Louisiana law to the Maryland statute, we find no error in the trial judge's conclusion that the illegal act committed is equivalent to this state's felony crime of indecent behavior with juveniles. LSA-R.S. 14:81.
[5] Having vacated defendant's sentence, we do not address his excessive sentence claims.